[Civ. No. 9800. Third Dist. Mar. 9, 1960.]

LOIS LAW, Appellant, v. HERMAN SHOATE, Respondent.

John B. Kramer and Charles W. Ehlers for Appellant.

Geary, Spridgen & Moskowitz for Respondent.

WARNE, J. pro tem.*—Appellant brought this action to recover damages for the wrongful death of her 16-month-old son, Gary Augerlavoie, who was alleged to have died as the result of injuries suffered by said child when struck by respondent's automobile when respondent was backing his car out of a parking space. The cause was tried by the court without a jury and judgment was entered in favor of respondent. This appeal followed.

The record discloses that on July 14, 1957, appellant and her two minor children were visiting her father who resided in the veterans housing project in Santa Rosa. During the course of this visit appellant left Gary with his grandfather while she went to the county hospital to call on a friend. While appellant was away the grandfather took care of the child in a large room in his apartment which was used as a combination kitchen and living room. While the grandfather was in the process of cooking dinner, Gary played on the floor with the other children. Although the outside door of the apartment was closed Gary managed in some way to get out of the room onto the grass play area at the side of the building. This grass play area adjoined a private parking area used by the families living in the housing project. The parking area was separated from the play area by two logs between which ran a dirt path. The parking area fronted upon Gunn Avenue, a private road within the housing project.

At the same time respondent and his family were visiting in another apartment occupied by his wife's parents. He had parked his automobile in the parking area facing toward the play area, between two other vehicles, in an apparently reserved parking space. Respondent was requested to move his car. Respondent testified in substance that in response to this request he left the apartment of his wife's parents and approached his car in an ordinary pace from the left rear side; that as he approached his car he had an unobstructed

---

*Assigned by Chairman of Judicial Council.

view of the left side and the rear thereof but could not see the opposite side; that he knew children lived in the project; and that he did not see any children in the grass play area or within the immediate vicinity of his car or on any part of the parking area. Respondent further testified that he then entered the car, started it, looked back over his right shoulder, and was backing in a normal fashion when he heard one Alexander Hopkins, an eyewitness to the accident, holler, "Baby under your car"; that he stopped immediately, got out of the car and discovered the decedent "under the middle of the car"; and that at the time he stopped the car it had moved three or four feet. An autopsy disclosed that the cause of death was internal hemorrhage resulting from a torn liver.

The witness Hopkins testified that he was seated about 100 feet from respondent's car; that when respondent started his car and commenced to back his vehicle he saw the baby crawling to the right rear of respondent's vehicle and shouted a warning; that respondent was backing his vehicle slowly and stopped immediately upon his warning; that respondent's vehicle had backed three or four feet; and that he had observed no children in the area that day. On these facts and circumstances the trial court found that respondent at the time of the accident acted in a reasonably prudent and careful manner under the surrounding circumstances and that he was not negligent or careless in his conduct or in his operation of his motor vehicle at that time; and further that he at all times pertinent in respect thereto did everything which a reasonably prudent person would do.

Appellant contends that the findings are contrary to the evidence and the law and do not support the judgment. The gist of her argument is that the respondent was negligent as a matter of law. In support of her contention she relies heavily upon the cases of *Cambou* v. *Marty*, 98 Cal.App. 598 [277 P. 365] and *Gorzeman* v. *Artz*, 13 Cal.App.2d 660 [57 P.2d 550], to show that respondent must under the facts and circumstances of the instant case be held guilty of negligence as a matter of law. We find no merit in appellant's contention. Neither the Cambou case nor the Gorzeman case attempts to define rigidly a standard of conduct which must be adhered to under all circumstances lest the actor be considered negligent. ■ Such was the ruling in the case of *Lotta* v. *City of Oakland*, 67 Cal.App.2d 411, 413 [154 P.2d 25], wherein the court said:

"Negligence as a matter of law, and negligence *per se*, are terms of general use, but not easily defined. Where the standard of conduct of a reasonable man is expressly defined by legislative enactment or judicial decision the failure to conform with that standard is called negligence *per se*. But, when the standard of obligatory conduct is not fixed by a legislative enactment, it is that of a reasonable man under the circumstances. (Rest. Torts, § 285.) Where the standard is not fixed by judicial decision covering the same situations or circumstances the jury must determine the issue of negligence on the basis of the standard of reasonable conduct, or the degree of care which a reasonable person under similar circumstances would exercise to protect another from harm. (*Donnelly* v. *Southern Pacific Co.*, 18 Cal. 2d 863, 869 [118 P.2d 465].)

"In support of his contention that this court should hold that respondents were guilty of negligence *per se* the appellant cites *Cambou* v. *Marty*, 98 Cal.App. 598 [277 P. 365] ; *Parra* v. *Cleaver*, 110 Cal.App. 168 [294 P. 6], and similar cases holding that the nature of the place, the surrounding circumstances, and the knowledge of the presence of the person injured, all contribute to impose upon the actor a greater degree of caution and that under those circumstances the jury properly found negligence. *But no one of these authorities has fixed a standard of care the failure to conform with which would be negligence per se.* In each case all the surrounding circumstances are reviewed and the effect of the rulings is that under those particular circumstances the actor was guilty of simple negligence. There is a marked difference between such a holding and one that the evidence of one party alone established a case of negligence as a matter of law." (Emphasis added.)

The facts and circumstances of the instant case are entirely different than those in either the Cambou case, *supra*, or the Gorzeman case, *supra*. In the Cambou case the accident occurred on an inclined private driveway leading only to the home of the infant decedent and actually forming a part of the yard of the home. The defendant was related to the decedent's family and had been a frequent visitor to the decedent's home. He had intimate knowledge of the decedent's family situation and was aware that the children, including the decedent, frequently played in and about the area where the accident occurred. The decedent in the presence of defendant shortly before the occurrence of the accident told his mother that he

was going outside to get an egg. The defendant's errand or business "on the premises was urgent and . . . great haste characterized his every movement." In his departure from the place where he had conversed with the child's father he ran rapidly to his vehicle. He jumped hurriedly into the auto and started up right away, coasting down backward, and then the accident occurred. None of these circumstances exist in the instant case. In the Gorzeman case the defendant had also been a frequent visitor to the plaintiff's home. He "had been calling at the infant's home some two months prior to the accident, on an average of six times a week." He had knowledge that the infant plaintiff and other children frequently were present in the private driveway where the accident occurred, and also had knowledge that these children frequently were congregated in the area to the rear of his bakery truck. These circumstances did not exist in the instant case. The appellate court in the Gorzeman case, as in the Cambou case, was simply attempting to determine whether the evidence of the particular case justified a finding of the trial court that the defendant was negligent. In the instant case, as hereinabove pointed out, the accident occurred in an area designated and set aside for the parking and movement of motor vehicles on a roadway designed for vehicular access to a number of dwelling units. The respondent had no prior knowledge that children played or were likely to be in this area. The defendant walked to his parked vehicle and looked to the rear and to the left side of his vehicle. He observed no children in the area. He then got into his vehicle, started the engine, and looked over his right shoulder observing that everything was clear, after which he started to back his vehicle away from his parked position. He backed his vehicle slowly for a distance of three or four feet and stopped immediately when he heard a shout that a baby was under his car. Further, the eyewitness Hopkins was in a position where he could observe the respondent's vehicle in the area to the rear of it. He testified that he did not see the decedent until the respondent's vehicle started to move backward. At that time he first saw the decedent crawling about two or three feet behind the rear of the respondent's car.

It seems to us that the trial court correctly summed up the case in its memorandum opinion and order as follows: "The defendant, in this case, had no reason to believe that a child would be in the vicinity of his vehicle. The place of the accident was a place reserved for the parking of vehicles. Defend-

ant was unable to see the decedent child before he started his car in motion and then the child was in such a position that defendant could not have seen him. Defendant, at all times herein, acted as an ordinarily prudent person would act if confronted with a similar situation."

We conclude that there is substantial evidence to support the trial court's findings and the judgment.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.